1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DAVID E. SIMON, et al,,                    ) Case No.: 1:10-cv-00597 AWI JLT
                                                )
12                     Plaintiffs,              ) FINDINGS AND RECOMMENDATIONS
           v.                                   ) GRANTING PLAINTIFFS' MOTION FOR
13                                              ) DEFAULT JUDGMENT
                                                )
14   MDC CREDIT CORP., et al.,                  ) (Docs. 36, 39)
                                                )
15                     Defendants.              )
     _____   )
16

17         Plaintiffs seek the entry of default judgment against MDC Credit Corp and Premium

18   Acquisitions, Inc. ("Defendants"). (Doc. 32). The Court reviewed the motion and supporting

19   documents and determined that this matter is suitable for decision without oral argument pursuant to

20   Local Rule 230(g). For the following reasons, Court recommends the motion for default judgment

21   be **GRANTED**.

22   **I.  Procedural History**

23         Plaintiffs initiated this matter by filing a complaint on April 6, 2010, alleging causes of action

24   stemming from breaches of a written contract. (Doc. 2). Within two months of filing, Plaintiffs

25   perfected service on defendants MDC Credit Corp, Premium Acquisitions, Inc and Bluejay

26   Management, LLC. (Doc. 8, 9, 10). These defendants failed to appear.

27         In their initial scheduling conference statement filed on July 6, 2010, Plaintiffs asserted that

28   they would seek default against MDC Credit Corp and Premium Acquisitions "in the near future."

                                                  1

1  (Doc. 11 at 2).  Likewise, Plaintiffs reported that the Bluejay Management served was, in fact, not

2  the correct entity.  *Id.*  Plaintiffs sought additional time to locate the correct "Bluejay Management,

3  Inc." and to locate and serve Defendant, Jesimon Ranch.  *Id.*  Finally, Plaintiffs reported that they

4  were negotiating with the Internal Revenue Service regarding the amount of taxes owed by Plaintiffs,

5  which the Defendants had agreed to pay in the underlying contract action.  (Doc. 11 at 2-5).  As a

6  result, the Court continued the scheduling conference, originally set on July 13, 2010, to October 14,

7  2010.  (Doc. 12).

8       On October 13, 2010, Plaintiffs filed their second scheduling conference report.  (Doc.

9  14).  In it, Plaintiffs continued to report nearly the exact same circumstances as in their earlier

10  report. (Doc. 14 at 2).  Once again, because no defendant had appeared in the case, the Court

11  continued the scheduling conference to January 20, 2011. (Doc. 15).  However, the Court ordered

12  Plaintiffs to file proofs of service on Jesimon Ranch, Inc. and Bluejay Management., to seek an order

13  allowing publication to these defendants or to dismiss them from the case.  *Id.* at 2.  Likewise, the

14  Court ordered Plaintiffs to seek default judgment against the defendants that had been served but not

15  appeared. *Id.*

16       Plaintiffs filed a request for dismissal of the action against Jesimon Ranch, Inc. and Bluejay

17  Management on November 22, 2010.  (Doc. 21). The next day, the Clerk of the Court entered default

18  as to MDC Credit Corp and Premium Acquisitions, Inc., pursuant to Plaintiffs' request.  (Doc. 20).

19  On January 14, 2011, the Court vacated the January 20, 2011, scheduling conference in light of the

20  case posture but ordered Plaintiffs to seek default judgment against the defendants within 30 days.

21  (Doc. 24).

22       On February 9, 2011, Plaintiffs filed an ex parte application seeking additional time within

23  which to file their motion for default judgment.  (Doc. 25).  Plaintiffs reported they paid the entirety

24  of the tax liability but filed a request for refund.  *Id.* at 2. Given the uncertainty of the IRS settlement,

25  the Court found good cause to extend the deadline by which Plaintiffs were required to seek default

26  judgment.  (Doc. 26).

27       In a status report filed on September 12, 2011, Plaintiffs reported the IRS confirmed its

28  decision to deny the claim for refund, except to the extent that an amount in excess of the liability

1   was paid. (Doc. 34 at 2).  Therfore, the IRS forwarded the case to Appeals for further consideration.

2   As a result, Plaintiffs reported they would file a complaint in the United States District Court for the

3   Northern District of California, seeking a refund of amounts already paid, together with interests and

4   costs.  *Id.*

5        On October 12, 2011, Plaintiffs filed a motion for default judgment (Doc. 39), which was

6   corrected on November 4, 2011.  (Doc. 39).

7   **II.    Legal Standards for Default Judgment**

8        The Federal Rules of Civil Procedure govern applications to the Court for issuance of default

9   judgment.  Where a default has been entered because "a party against whom a judgment for relief is

10  sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a

11  default judgment.  Fed.R.Civ.P. 55(a)-(b).  After the entry of default, well-pleaded factual allegations

12  regarding liability are taken as true, but allegations regarding the amount of damages must be proven.

13  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d

14  557, 560 (9th Cir. 1977).

15        The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.

16  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v.*

17  *Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  In addition, granting or denying a motion for default

18  judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1980 (9th Cir.

19  1980).  The Ninth Circuit opined,

20       Factors which may be considered by courts in exercising discretion as to the entry of a
          default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits
21      of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of
          money at stake in the action, (5) the possibility of a dispute concerning material facts, (6)
22      whether the default was due to excusable neglect, and (7) the strong policy underlying
          the Federal Rules of Civil Procedure favoring decisions on the merits.

23

24  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default

25  judgment is disfavored.  *Id.* at 1472.

26  **III.   Plaintiffs' Factual Allegations**

27        Plaintiffs allege David Simon, as the personal representative of the estate of Ralph A Simon

28  and Jesimon Ranch entered into a Share Purchase Agreement on October 1, 2003.  (Doc. 2 at 6).

1   Under the terms of the Share Purchase Agreement, MDC Credit Corp agreed to purchase seventy-

2   five percent of the Jesimon Ranch Stock, and Premium Acquisitions agreed to purchase twenty-five

3   percent of the Jesimon Ranch Stock. *Id*. Defendants agreed to "to cause Jesimon Ranch to pay and

4   be liable for Jesimon Ranch's Federal, State and Local corporate income tax liability for the fiscal

5   year ending September 30, 2004." (Doc. 2 at 7). In addition, Plaintiffs assert the Share Purchase

6   Agreement included the following:

7       [Defendants] specifically agreed to prepare and timely file the federal and California
        corporate income tax returns for Jesimon Ranch's fiscal year ending September 30, 2004,
8       and all of Jesimon Ranch's fiscal years thereafter. [Defendants] shall cause Jesimon
        Ranch to report on its federal and state income tax returns for the fiscal year ending
9       September 30, 2004, and all fiscal years thereafter, all gain attributable to the receipt of
        proceeds from the sale of any of its assets during such fiscal years as well as all dividend
10      and interest income received and any other income, however derived, during the current
        fiscal year *and shall timely pay the applicable tax authorities the income tax liability, if*
11      *any, resulting from such gain in light of the other post closing activities of Jesimon*
        *Ranch.*

12

13  (Doc. 2 at 7) (quoting Share Purchase Agreement ¶ 6.9). Defendants agreed also to keep Jesimon

14  Ranch solvent, and to indemnify the Simon Estate against any and all claims arising, resulting from

15  or relating to a nonfulfillment of any agreement or covenant under the Share Purchase Agreement.

16  *Id.* at 8. However, Plaintiffs assert Defendants failed to pay Jesimon Ranch's taxes, and the Internal

17  Revenue Service collected the unpaid taxes from the Simon Estate. (Doc. 39 at 4).

18  **IV.   Application of *Eitel* Factors**

19          Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in

20  favor of granting Plaintiffs' motion for default judgment.

21          A.   Prejudice to Plaintiffs

22          Plaintiffs have no other alternative by which to recover damages suffered as a result of

23  actions by Defendants. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *J & J Sports Productions v.*

24  *Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court

25  finds that Plaintiffs would be prejudiced if a default judgment is not granted.

26          B.   Merits of Plaintiff's claims and sufficiency of the complaint

27          Given the kinship of these factors, the Court will consider the merits of Plaintiffs' substantive

28  claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*,

4

1    2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has suggested

2    that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may

3    recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kloepping v. Fireman's Fund*, 1996 U.S.

4    Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).  Because Plaintiffs request the entry of default

5    judgment with damages calculated based upon the claims of breach of contract and fraud, the Court

6    will limit its analysis to these claims.

7           *Breach of contract*

8           To establish breach of contract under California law, Plaintiffs must establish that there was a

9    contract under which they performed or had an excuse for non-performance, and that Defendants

10   breached the contract, which resulted in damages to Plaintiffs.  *Wall Street Network, Ltd. v. New*

11   *York Times, Co.*, 164 Cal.App.4th 171, 178, 80 Cal.Rptr.3d 6 (2008) ("The standard elements of a

12   claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-

13   performance, (3) defendant's breach, and (4) damage to plaintiff therefrom.").

14          Here, Plaintiffs allege the Simon Estate entered into a Share Purchase Agreement with

15   Defendants on October 1, 2003, and that the Simon Estate performed the duties and obligations

16   arising under the agreement.  (Doc. 2 at 10).  According to Plaintiffs, Defendants breached the

17   agreement "by failing to pay Jesimon Ranch's tax liabilities, by failing to keep Jesimon Ranch

18   solvent and in good standing, and by failing to defend, indemnify, and hold Plaintiffs harmless from

19   liability related to the failure to Pay Jesimon Ranch's tax liabilities."  (Doc. 39 at 8) (citing Doc. 2 at

20   9-10).  As a result of the breach, Plaintiffs incurred damages and were "liable for the taxes, penalties

21   and interests caused by Defendants' failure to pay the Jesimon Ranch's tax liabilities."  *Id*.  Also,

22   Plaintiffs have incurred legal fees and expenses as a result of the tax proceedings.  *Id.*  Therefore,

23   Plaintiffs have sufficiently stated a breach of contract claim against Defendants.

24          *Fraud*

25          Under California law, Plaintiffs must show the following to establish fraud: "a false

26   representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  *Moore*

27   *v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572.  The burden to

28   establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because

1   "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud."

2   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed. R. Civ. P. 9(b).

3   "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

4   misconduct charged." *Kearns*, 576 F.3d at 1124, citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

5   1097, 1120 (9th Cir. 2003); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2004)

6   (allegations of fraud must include "an account of the time, place, and specific content of the false

7   representations as well as the identities of the parties to the misrepresentations") (internal quotation

8   marks and citation omitted).

9         Plaintiffs assert Defendants did not have an intent to perform their obligations, which can be

10   shown by "the fact that they did not, in fact, perform their promises, as well as their cursory and

11   summary rejection of Plaintiffs request that they perform." (Doc. 39 at 9 n. 3) (citing Doc. 2 at 9).

12   Specifically, Plaintiffs allege Defendants "did not intend to pay the Federal, State and Local

13   corporate income tax liabilities of Jesimon Ranch, nor keep Jesimon Ranch solvent and in good

14   standing, as required by the Share Purchase Agreement." (Doc. 2 at 16).  Plaintiffs allege the Simon

15   Estate reasonably relied upon Defendants' promises "as part of the consideration exchanged in

16   connection with the sale of Jesimon Ranch." (Doc. 39 at 9).  Finally, as discussed above, Plaintiffs

17   allege damages because the Simon Estate was held liable for tax liabilities, penalties and interests

18   after Defendants failed to pay taxes for Jesimon Ranch.  *Id.*  Given these facts, the allegations for

19   fraud have been plead with specificity sufficient to state a cognizable claim against Defendants.

20         C.   Sum of money at stake

21         In considering this factor, the Court "must consider the amount of money at stake in relation

22   to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, the award

23   requested is $2,570,538.00.  (Doc. 39 at 10).  This amount "is precisely the amount Plaintiff paid to

24   the IRS due to Defendants' failure to pay Jesimon Ranch's taxes." *Id.*  Thus, the amount of damages

25   is proportional to Defendants' conduct.

26         D.   Possibility of dispute concerning material facts

27         The Court also considers the possibility of dispute as to any material facts in the case. Here,

28   however, there is little possibility of dispute concerning material facts because (1) based on the entry

6

1  of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendants have

2  not made any effort to challenge the Complaint or otherwise appear in this case.

3      E.   Whether default was due to excusable neglect

4      Generally, the Court will consider whether Defendants' failure to answer is due to excusable

5  neglect.  *See Eitel*, 782 F.2d at 1472.  Here, Defendants were properly served with the Summons and

6  Complaint.  Therefore, it is unlikely that Defendants' failure to answer, and the resulting defaults

7  entered by the Clerk of Court, were the result of excusable neglect.  *See Shanghai Automation*

8  *Instrument Co., Ltd. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D.Cal. 2001).

9      F.   Policy disfavoring judgment

10     As noted above, default judgments are disfavored because "[c]ases should be decided on their

11 merits whenever reasonably possible.  *Eitel*, 782 F.2d at 1472.  However, Defendants' failure to

12 answer the Complaint makes a decision on the merits impractical.  Consequently, the policy

13 underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh

14 against entry of default judgment.

15 **IV.   Damages**

16     Allegations regarding the amount of damages requested must be proven.  *See Pope*, 323 U.S.

17 at 22; *see also Geddes*, 559 F.2d at 560.  Under California law, damages for a breach of contract

18 should equal "the amount which will compensate the party aggrieved for all the detriment

19 proximately caused thereby, or which, in the ordinary course of things, would be likely to result

20 therefrom."  Cal. Civ. Code. §3300.  As a result, damages "should, insofar as possible, place [a]

21 plaintiff in the same position he would have been had the contract been performed, but he should not

22 be awarded more than the benefit which he would have received had the promissor performed."

23 *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 123

24 (1977).

25     In this case, the IRS issued a Notice of Liability to Plaintiffs for Jesimon Ranch's tax

26 deficiencies on April 7, 2009.  (Doc. 39 at 12; Simon Decl, Exh. A).  Plaintiffs paid the IRS a total of

27 $2,970,132.00 for the claimed tax deficiencies.  (Doc. 39 at 12-13).  However, Plaintiffs "engaged in

28 negotiations with the IRS to resolve the tax liability issues related to the sale of Jesimon Ranch to

1  [Defendants]" and "the Examination Division of the IRS issued a notice of partial disallowance of

2  Plaintiff's claim." *Id.* at 13.  As a result, Plaintiffs were held liable for $2,570,538.00. *Id.* Given the

3  facts presented above, the Court finds Defendants are liable for $2,570,538.00, and this amount

4  should be awarded in compensatory damages for Defendants' breach of contract.[1]

5  **V.   Findings and Recommendation**

6        Application of the *Eitel* factors weighs in favor of default judgment.  Accordingly, the Court

7  is acting within its discretion to grant default judgment. *See Aldabe*, 616 F.2d at 1092.  Therefore,

8  **IT IS HEREBY RECOMMENDED** that:

9        1.      Plaintiffs' motion for the entry of default judgment against Defendants be

10               **GRANTED**; and

11       2.      Plaintiffs be awarded $2,570,538.00 in damages.

12       These Findings and Recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the

14  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

15  fourteen days after being served with these Findings and Recommendations, any party  may file

16  written objections with the court.  Such a document should be captioned "Objections to Magistrate

17  Judge's Findings and Recommendations."  The parties are advised that failure to file objections

18  within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*,

19  951 F.2d 1153 (9th Cir. 1991).

20

21  IT IS SO ORDERED.

22  Dated:   **December 2, 2011**                                    **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

---

[1] Plaintiffs note the IRS tax litigation is ongoing, and "in the interest of equity. . . consent to forebear enforcement" of the entry of default judgment to reflect the amount remaining at the conclusion of the IRS litigation."  (Doc. 39 at 14).